IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Douglas Litowitz, | ) | |
| | ) | |
| Plaintiff, | ) | No.: |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge: |
| | ) | |
| Marc D. Smith, as director of the Illinois | ) | |
| Dept. of Children and Family Services, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS,
DECLARATORY JUDGMENT**

**Nature of the Case**

This lawsuit challenges the constitutionality of the Illinois statute titled "Educational Expenses for a Non-Minor Child," 735 ILCS 5/513 (the "Statute"), which allows a court to order an unmarried parent but not a married parent to pay post-secondary *(i.e.,* college) educational expenses of a child from the ages 18-23, and in some cases up to the age of 25.

Plaintiff contends that the Statute violates his constitutional rights under the Fourteenth Amendment of the U.S. Constitution because it creates disparate burdens on two classes of similarly situated persons. First, the parents of college-bound students are treated differently based on marital status, because only the unmarried parents have a legal obligation to pay for college while married parents have no obligation to pay. Second, college students are treated differently based on

whether their parents are married, since students of unmarried parents have an additional source of support not available to students whose parents are married. Plaintiff challenges the constitutionality the Statute both facially and as-applied.

## Jurisdiction and Venue

1. Jurisdiction is proper pursuant to 28 U.S.C. 1331 because this action involves a question of federal Constitutional law, namely the Fourteenth Amendment to the United States Constitution.

2. Venue is proper in this District as all parties reside within the Northern District of Illinois.

## The Parties

3. Plaintiff Doug Litowitz ("Litowitz") is a resident of Lake County, Illinois and is subject to 735 ILCS 5/513 (the "Statute").

4. Defendant Marc D. Smith is the Director of the Illinois Dept. of Children and Family Services, the State executive responsible for child support matters in this State.

## Factual Allegations

5. In 1997, Plaintiff Doug Litowitz was a visiting professor of law at Florida State University when he met and began dating Camellia Abetova ("Abetova") who was an exchange student in the business school.

6. Abetova is a Kazakhstan citizen by birth and now a U.S. citizen, residing in Lake County, Illinois.

7. That same year—1997—she returned permanently to her home in Kazakhstan. She was employed as an executive at Motorola's office in Kazakhstan where English was the medium of communication.

8. From 1997 to 2000, she visited Litowitz once or twice a year for a few weeks each time.

9. On one of these visits in the Fall of 2000, she accidentally got pregnant, and returned to Kazakhstan presumably unaware that she was pregnant.

10. A few weeks later, before Litowitz was informed of Abetova's pregnancy, he met a woman who would become his current wife, with whom he has been together since Fall of 2000. They have been together almost 20 years, married 18 years, with two daughters, 13 and 11, living in the Chicago suburbs.

11. Litowitz was informed of Abetova's pregnancy in 2001, whereupon Litowitz explained that he had met another woman whom he wanted to marry; however, he agreed to provide Abetova with support and to share custody of the child if she decided to have it. Litowitz's wife agreed that the child was welcome into their home.

12. Abetova gave birth to their son ("Son") in July of 2001, and raised him in Kazakhstan until 2013.

13. Plaintiff Litowitz was never married to Abetova.

14. The child of Litowitz and Abetova ("Son") is now 18 years old and a U.S. citizen whose residence is unknown to Litowitz.

15. During the first 12 years of his Son's life (2001-2013), Litowitz sent extensive child support payments and packages of Western products to Kazakhstan,

not according to any predetermined schedule but roughly every month. In many years, he sent Abetova more money than her entire salary. In return, at Litowitz' expense, Abetova would bring his Son to America for a few weeks about once every other year, never allowing him to stay with his father. Litowitz took a paternity test and obtained a U.S. passport and citizenship for his Son.

16. In 2007, Abetova requested some documentation authorizing her to have custody of their Son, since her passport was from Kazakhstan and the Son's was American, so there was some suspicion that she might be accused of kidnapping. To solve this, they consulted with a lawyer in Waukegan who drew up a Parenting Agreement whereby Litowitz agreed to pay 15% of his after tax income as child support (at the time his compensation was about $160,000 gross) in exchange for Litowitz having custody of the Son in the summer months and for two weeks in the winter. The Parenting Agreement was entered into Lake County Family Court, but it was largely a dead letter because neither party could enforce it from halfway around the world.

17. Both parties proceeded to breach the literal terms of the Parenting Agreement, which was not a big deal since it was largely a symbolic document anyway. As mentioned above, Abetova would bring his Son to America for a few weeks about once every other year, never giving him the custody awarded in the Parenting Agreement. On each visit (always paid by Litowitz), they stayed in a hotel paid for by Litowitz, because Abetova refused to allow their Son to stay alone with Litowitz and his family.

18. In 2013, Abetova emigrated from Kazakhstan to Northbrook, Illinois, the suburb next door to where Litowitz was living with his family.

19. Upon her arrival, Litowitz co-signed for her car and her apartment and helped her settle into life in America. Litowitz's parents recognized the Son in their estate plan and Litowitz gave him a share of his life insurance proceeds. The Son was put in middle school in Northbrook and was taught how to speak English.

20. A few months later, without a word of warning, Abetova sued Litowitz in Lake County Circuit Court (case #07-F-699) for past and future child support, alleging that he had breached the Parenting Agreement by not giving her the full 15% specified, even though she herself had violated the same Parenting Agreement by failing to give Litowitz any custody of the Son.

21. In a hearing in Lake County Courthouse in 2014, Abetova sought a rule to show cause holding Litowitz in contempt for not paying her the full amount she was owed under the Parenting Agreement. Litowitz argued that the Parenting Agreement should be equitably amended since his salary had doubled since it was signed, so the 15% figure would create a retroactive windfall of child support. Litowitz also objected that Abetova could not enforce the Parenting Agreement since she had violated its custody provisions every year.

22. The judge who presided over the proceedings refused to impose any punishment on Abetova, saying that her failure to give custody did not lessen Litowitz's financial obligations and requiring Litowitz to pay the same amount regardless of whether he got to see his Son. The judge had Litowitz handcuffed in his suit and tie and thrown into Lake County Jail with bail set at $56,000 cash

5

money (not 10%, but the full amount in cash) which his parents had to bring to the Lake County Jail the following day in a giant bag of $100 dollar bills.

23. Litowitz fulfilled his child support obligations until the Son reached the age of 18. Litowitz had wanted custody of his Son and spent hundreds of thousands of dollars over the years, been thrown in jail, and had never been given a single night with his Son.

24. Yet when the Son reached 18, Abetova petitioned the Court to make Litowitz pay post-secondary (college) expenses under the Statute.

25. In a ruling dated October 29, 2019, the Lake County Circuit Court held that Litowitz was required to pay $5,000 per year in child support for his son's post-secondary education for the next four years. See Exhibit 1 for the ruling. The Judge ruled that the amount he had to pay was unrelated to his level of earnings, and that he owed $5,000/year even if he was jobless.

26. Throughout the Fall of 2019 and the Winter of 2020, Litowitz was never informed in which country his son was living, or if his son was in college, and obviously had no input into his choice of a school; Litowitz never received a grade report; and has never had a direct conversation in English with his Son.

27. On May 9, 2020, Litowitz received an email from Abetova's lawyer, Janice Berman, demanding that he pay her office $5,000 within seven days, but not saying where the Son was in school or why Abetova had not complied with the Court Order requiring her to provide Litowitz with information about him.

28. On May 11, 2020, attorney Berman sent Litowitz a grade report for the Son from DePaul University, but refused to provide any contact information.

Litowitz had no input into his Son's choice of college, and Litowitz is blocked from contact with his Son by his mother and her lawyer who refuse to give Litowitz his Son's email or phone number.

29. Litowitz has not paid the $5,000 court order because he believes that 735 ILCS 5/513 is unconstitutional.

**COUNT I: Equal Protection Violation of the Fourteenth Amendment**

30. Plaintiff re-alleges and reincorporates, as though fully set forth herein, each and every allegation above.

31. The Equal Protection Clause of the Fourteenth Amendment provides that "No state shall deny any person within its jurisdiction of equal protection of the laws." U.S. Const. Amend. 14.

32. The Statute treats similarly situated persons differently in two ways: first, it punishes unmarried parents by imposing an additional child support obligation that isn't imposed on married parents; and second, it punishes children of married parents by denying them additional child support for post-secondary education which is available to children of unmarried parents.

33. The ostensible rationale for this differential treatment is outdated. In 1979, the Illinois Supreme Court said (without proof or hard evidence of any kind) that unmarried parents are 'abnormal' and cannot provide the nurturing of married parents, so the state is justified in giving an extra boost to 18-23 year olds who are in the category of 'non-minors' (that is, adults) who still get 'child support.' *Kujawinski v. Kujawinski*, 376 N.E.2d 1382, 1390 (Ill. 1978) (citing precedent from

7

1959, the Court said that divorced families are not 'normal' and are presumed 'disrupted').

34. The standard of review applicable to the Statute is likely strict scrutiny, as it affects the fundamental rights of marriage and education of the family.

35. But even under a rational basis standard, the Statute cannot pass constitutional muster because there is no basis for saying that unmarried parents are 'abnormal' or that their family is 'disrupted,' when it is obvious that many divorced parents love and provide for their children, while many married parents abandon their children when they reach majority.

36. Further, differential treatment cannot be based on the theory that divorce is abnormal when almost half of marriages end in divorce, and there is no longer any stigma attached to it.

37. As applied to this case, the Statute imposes an extra financial burden on Litowitz solely because he was never married to the Son's mother. The Statute also gives his Son extra financial support that is not available to similarly situated college students whose parents happen to be married. So the Statute burdens unmarried parents and it burdens children of married parents, based on outdated superstitions dating back half a century or more.

WHERFORE, Plaintiff respectfully requests that this Honorable Court:

(a) issue a preliminary and then permanent injunction prohibiting Defendant from enforcing 735 ILCS 5/513;

(b) issue a declaratory judgment that 735 ILCS 5/513 is unconstitutional both on its face and as applied to Plaintiff;

8

(c) enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

(d) grant Plaintiff any other relief the Court deems appropriate.

Dated: June 23, 2020

,

Respectfully Submitted,

<u>/s/ Mark G. Weinberg</u>
<u>/s/ Adele D. Nicholas</u>
*Counsel for Plaintiff*

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com